# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**GARY STANFIELD**
8315 Mechanicsburg-Catawba Rd.
Mechanicsburg, Ohio 43044

    Plaintiff,

vs.

**KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.**
5885 Green Pointe Drive S., Unit F
Groveport, OH 43125

    Defendant.

CASE NO. 2:19-cv-1813

JUDGE

MAGISTRATE JUDGE

**Jury Demand Endorsed Hereon**

## COMPLAINT

NOW COMES Plaintiff Gary Stanfield ("Plaintiff") and proffers this Complaint for damages against Defendant Konica Minolta Business Solutions U.S.A., Inc. (hereinafter "Defendant" and/or "Konica Minolta").

## JURISDICTION AND VENUE

1. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. This action is brought pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Ohio Laws of Discrimination, Ohio Revised Code 4112 ("Chapter 4112"), the Family Medical Leave Act, 29 U.S.C. § 2611(2) and 28 U.S.C. § 1331.

3. Plaintiff is an "eligible employee" as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2).

4. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A). Defendant was engaged in commerce or an industry or activity affecting commerce and employed 50 or

more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

5. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6. Venue is proper pursuant to 28 U.S.C. § 1391, due to the fact that the Defendant has a facility in Columbus, Franklin County, Ohio, at which the events in question took place.

7. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letter from the EEOC, a copy of which is attached hereto as Exhibit A.

## THE PARTIES

8. Plaintiff is a natural person residing in Champaign County, Ohio.

9. Defendant Konica Minolta is a foreign corporation doing significant business in the Southern District of Ohio.

10. At all times relevant herein, Plaintiff was an employee of Defendant as defined by the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), 29 U.S.C. § 2611(2) and the Ohio Revised Code 4112.

11. Defendant Konica Minolta is a covered "employer" as that term is defined by the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and by the Ohio Revised Code 4112.

12. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

## FACTUAL BACKGROUND

13. Plaintiff was employed by Defendant from on or about November 7, 2011 until his termination on March 1, 2019.

14. Plaintiff was employed as an Office Systems Specialist, responsible for servicing copy machines.

15. Upon being hired by Defendant, Plaintiff informed it that he could not work overtime. Specifically, Plaintiff suffers from a sleep disorder, anxiety and depression, conditions that are exacerbated by stress and changes to his sleep schedule.  It is very important that Plaintiff not have his sleep routine interrupted.

16. Plaintiff's doctor, Jeffrey Lodge, M.D., provided a request for reasonable accommodation to Defendant in July of 2015.  Specifically, the request explained Plaintiff's disabilities, explained why it was important that he not be on-call or work overtime and requested that he work Monday through Friday from 8:00 a.m. to 5:00 p.m.

17. Based on this request, Defendant granted Plaintiff's request and he was not required to be on-call or work any overtime.

18. Plaintiff was also specifically told, on June 24, 2014, that Defendant "does not have mandatory overtime."  Timothy Kendrick, Sr. Branch Service Manager, informed Plaintiff of this via email.

19. From this point on, Plaintiff was not required to work overtime, as it was not mandatory and was not an essential function of his position.

20. Throughout his employment with Defendant, Plaintiff also utilized FMLA leave for his serious medical conditions.

21. In October of 2018, Plaintiff utilized FMLA for a flare-up of his serious medical conditions for a period of a few weeks.  Dr. Lodge provided a doctor's note and filled out the FMLA certification for this leave, requesting that Plaintiff be off from October 20, 2018 to November 4, 2018.  Dr. Lodge indicated Plaintiff could return on November 5, 2018.

22. On November 2, 2018, Mr. Kendrick, who was also Plaintiff's direct supervisor, emailed him and asked him for an update on his return to work. Per Dr. Lodge's note, Plaintiff indicated that he would be back on November 5, 2018.

23. Mr. Kendrick told Plaintiff that prior to his return, he needed to have his doctor fill out a fitness for duty/return to work form, indicating he could return with no restrictions. If he did not do that, he could not return to work.

24. This directive was issued despite the fact that Defendant and Mr. Kendrick knew that Plaintiff had restrictions in place since 2014. Specifically, it knew that Plaintiff had the reasonable accommodation of not working any overtime in place.

25. Therefore, it knew he could not return to work with no restrictions and had no reason to believe that would be possible. It was then that Defendant began to set Plaintiff up for termination.

26. On November 5, 2018, Dr. Lodge evaluated Plaintiff again and requested that he remain off work until November 13, 2018. Dr. Lodge continued to indicate that Plaintiff should not be working overtime, as a reasonable accommodation for his disabilities.

27. Defendant pressured Plaintiff to ask his doctor to clear him to return with no restrictions, despite the fact that he had restrictions in place for the past several years and could not work overtime.

28. Plaintiff's doctor refused to waive his restrictions. On November 12, 2018, Mr. Kendrick told Plaintiff that all of a sudden, Defendant could not accommodate his request not to work overtime and informed him he had to remain on leave.

29. On or about November 26, 2018, Defendant finally allowed Plaintiff to return to work. Robbin Robinson, HR Staffing & Employee Relations Manager, emailed Plaintiff to tell him that

his doctor must provide an end date for his restriction, as if his disability would be miraculously cured and he would no longer need an accommodation.

30. On November 28, 2018, Plaintiff provided a note from his doctor that indicated his need for restrictions would end in October of 2023.

31. Defendant told Plaintiff that he either needed to be able to work overtime in the next three months or he would be terminated.

32. Plaintiff was terminated on or about March 1, 2019, because Defendant refused to accommodate his request to not work overtime.

33. Plaintiff was terminated because Defendant refused to accommodate his disability, despite doing so for several years prior to his termination. Interestingly, as soon as Plaintiff returned from FMLA leave, it was suddenly a requirement for him to work overtime.

34. Defendant discriminated against Plaintiff because he is a disabled individual, refused to accommodate his disability immediately after he returned from FMLA leave, and retaliated against him for utilizing a reasonable accommodation for his disability.

## COUNT I
### Disability Discrimination – R.C. § 4112.02

35. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

36. At all times relevant herein, Plaintiff suffered from a sleep disorder, anxiety, and depression, physical and mental impairment(s) within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

37. At all times relevant herein, Plaintiff was a qualified individual with a disability/disabilities within the meaning of R.C. § 4112.01(A)(13) of the Ohio Revised Code.

38. Defendant knew that Plaintiff was disabled and/or regarded him as disabled because

Plaintiff had previously taken FMLA leave for his disabilities. Additionally, Plaintiff's doctor had written notes to Defendant regarding Plaintiff's disabilities as early as 2015.

39. Defendant was aware of the difficulties suffered by Plaintiff as a result of his disability/disabilities because Plaintiff requested accommodations for his disabilities throughout his employment with Defendant beginning in 2015, in addition to utilizing FMLA leave for his serious medical conditions. Thus, Defendant was aware that Plaintiff continued to suffer from his disabilities.

40. Defendant discriminated against Plaintiff because of his disability/disabilities by taking the following non-exhaustive list of actions: terminating his employment, using his accommodations as a condition of his employment, threatening his employment, and/or by otherwise discrimination against him in the terms, privileges, and conditions of employment.

41. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

42. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT II
### Disability Discrimination – Americans with Disabilities Act

43. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

44. This claim is brought pursuant to 42 U.S.C. § 12101, *et seq.,* and as defined as 42 U.S.C. § 12101.

45. Plaintiff is an otherwise qualified individual.

46. Defendant knew or had reason to know that Plaintiff suffered from a disability and/or regarded him as disabled because Plaintiff had previously taken FMLA leave for his disabilities, and Plaintiff's doctor had written notes to Defendant regarding his disabilities.

47. Defendant was aware of the difficulties suffered by Plaintiff as a result of his disability/disabilities because Plaintiff requested accommodations for his disabilities throughout his employment with Defendant beginning in 2015, in addition to utilizing FMLA leave for his serious medical conditions. Thus, Defendant was aware that Plaintiff continued to suffer from his disabilities.

48. Defendant discriminated against Plaintiff because of his disability/disabilities by taking the following non-exhaustive list of actions: terminating his employment, using his accommodations as a condition of his employment, threatening his employment, and/or by otherwise discrimination against him in the terms, privileges, and conditions of employment.

49. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

50. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
**Failure to Accommodate- Americans with Disabilities Act**

51. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

52. At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. §12102.

53. Defendant knew or had reason to know that Plaintiff suffered from a disability/disabilities, and/or regarded him as disabled.

54. Plaintiff was an otherwise qualified individual with a disability/disabilities.

55. Plaintiff requested to not work overtime, a reasonable accommodation for his disability/disabilities pursuant to the ADA. Moreover, this request did not interfere with Plaintiff's essential job functions.

56. Such reasonable accommodations were possible for Defendant to provide.

57. Defendant violated the ADA by failing to accommodate Plaintiff's disability/disabilities by suddenly informing him that overtime was a condition of his employment with Defendant, despite its claim that overtime was not mandatory and not an essential function of Plaintiff's position.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

59. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
**Failure to Accommodate- R.C. §4112.02**

60. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

61. At all times herein, Plaintiff suffered from an impairment within the meaning of R.C. §4112.01.

62. At all times material herein, Plaintiff was a qualified individual with a

disability/disabilities within the meaning of R.C. §4112.01

63. Defendant knew or had reason to know Plaintiff suffered from a disability/disabilities and/or regarded him as disabled.

64. Plaintiff requested reasonable accommodations for his disability/disabilities.

65. Such reasonable accommodations were possible for Defendant to provide.

66. Defendant violated R.C. §4112.02 by failing to accommodate Plaintiff's disability and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

## COUNT V
### Retaliation- R.C. §4112.02

67. Plaintiff reasserts and reincorporates each and every allegation contained in paragraphs above as if fully rewritten here.

68. Plaintiff engaged in a protected activity by requesting reasonable accommodations for his disability/disabilities.

69. Defendant knew Plaintiff engaged in a protected activity, as Plaintiff and Defendant communicated via email about his request for accommodations.

70. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges, and conditions of employment.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

72. Defendant's conduct was willful, wanton, reckless, and/or malicious for which

Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VI
### Retaliation – Americans with Disabilities Act

73. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

74. Plaintiff engaged in a protected activity by requesting reasonable accommodations for his disability/disabilities.

75. Defendant knew Plaintiff engaged in a protected activity, as Plaintiff and Defendant communicated via email about his request for accommodations.

76. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

77. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

78. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT VII
### Retaliation – The Family Medical Leave Act (FMLA)

79. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten here.

80. Plaintiff exercised his rights under the FMLA, as he frequently took intermittent FMLA for his serious medical conditions and used continuous FMLA directly prior to his termination. As soon as he attempted to return from FMLA leave in November of 2018, Plaintiff was told that prior to returning, he needed to be cleared to return with no restrictions.

81. This directive was issued despite the fact that Defendant knew that Plaintiff had restrictions in place since 2014. Specifically, it knew that Plaintiff had the reasonable accommodation of not working any overtime in place.

82. Defendant retaliated against Plaintiff for using FMLA leave, by making it suddenly mandatory that he be able to return to work with no restrictions, despite knowing that he could not do so.

83. Plaintiff suffered an adverse employment action when Defendant terminated Plaintiff for being unable to return to work with no restrictions.

84. Plaintiff suffered an adverse employment action when Defendant terminated him from his position very close in time to his usage of continuous FMLA leave.

85. Defendant's termination of Plaintiff was directly related to his use of FMLA leave.

86. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

87. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel A. Sabo, Esq.*
Rachel A. Sabo (0089226)
Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
Rachel@TFFLegal.com
Pete@TFFLegal.com
614-610-9757 (Phone)
614-737-9812 (Fax)

*Counsel for Plaintiff*

### JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Rachel A. Sabo*
Rachel A. Sabo (0089226)